### Diane L. MARSHALL, Plaintiff,

v.

### Bruce R. JAMES, Public Printer, United States Government Printing Office, Defendant.

### Civil Action No. 98–1742 (AK).

United States District Court, District of Columbia.

July 31, 2003.

Samuel G Kooritzky, Kooritzky & Associates, Arlington, VA, Eugene Allen Williams, Washington, DC, for plaintiff.

Paul S. Padda, U.S. Attorney's Office, Civil Division, Daria Jean Zane, Michael C. Johnson, U.S. Attorney's Office, Pamela D. Huff, U.S. Attorney's Office, Civil Division, Washington, DC, for defendant.

## MEMORANDUM OPINION

KAY, United States Magistrate Judge.

Pending before the Court is Defendant's Motion for Summary Judgment ("Motion") [52], Plaintiff's Opposition to Defendant Bruce James' Motion for Summary Judgment ("Opposition") [53], and Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Reply") [55]. A hearing was held on this Motion on April 29, 2003. Upon consideration of the Motion, Opposition, and Reply, and the parties' oral arguments, and for the reasons set forth below, the Court has determined that Defendant's Motion for Summary Judgment [52] shall be **GRANTED**. An appropriate Order accompanies this Memorandum Opinion.

## I. BACKGROUND

### A. The Plaintiff's Claims of Racial Discrimination, Hostile Work Environment, and Retaliation During Her Employment at the United States Government Printing Office.

The Plaintiff, Diane L. Marshall, is an African American woman who is currently employed by the United States Government Printing Office ("GPO") as a Printing Specialist at Grade 12. (Opposition at 1; Motion at 13.) In the instant law suit, the Plaintiff is pursuing an unfocused litany of claims against the GPO for actions which she alleges constitute racial discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Complaint [1] at 2–3.) On October 17, 1996, the Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor alleging that she was discriminated against based on her race. (Motion at 5–6 and Ex. 2 EEO Counselor's Report.) According to the report by the EEO counselor, Nathan

Smith, the Plaintiff's allegation was that she was discriminated against based on her race when she received a lesser performance evaluation than a white employee in the same position. (*Id.*) The counselor stated that the Plaintiff believed this was "an example of the continuing disparate treatment that blacks receive ... while white employees are often given an unfair advantage." (*Id.*) Having been unable to informally resolve her claim of discrimination, on December 12, 1996, the EEO counselor provided the Plaintiff with a Notice of Final Interview with EEO Counselor and advised her that she had 15 days in which to file a formal administrative complaint. (*Id.* at 6 and Ex. 3 Notice of Final Interview with EEO Counselor.) Because the Plaintiff received notice of her right to file a formal complaint on December 12, 1996, she had until December 27, 1996 to file her complaint with the Equal Employment Opportunity Commission ("EEOC").

On January 9, 1997, the Plaintiff mailed her formal administrative complaint to the GPO. (*Id.* at 6–7 and Ex. 4 Envelope enclosing Complaint of Discrimination.) According to the file stamp on the envelope, the complaint was received at the EEO on January 16, 1997. (*Id.*) This was well beyond the 15 day deadline established by the federal regulations.

The Plaintiff was represented by an attorney at least as early as the filing of her formal complaint. (*Id.* at Ex. 4 Complaint of Discrimination identifying Joseph Cardona of Kooritzy & Associates in Arlington, Virginia as the person representing the Plaintiff in processing the complaint.) However, the Plaintiff's discrimination claim is difficult to decipher from her EEO complaint. It appears that the Plaintiff transposed her responses to the questions inquiring as to how she believed she was discriminated against and what corrective action she was seeking. In stating the

corrective action she sought, the Plaintiff stated that "Chris Brown [her supervisor] marked # 6 element on my evaluation, which should have been unobserved. White employee same grade and title doing same job outstanding when she does do element either." (*Id.*) The Court assumes this response does not set out the corrective action the Plaintiff sought, but was instead an attempt to articulate the Plaintiff's perception that she was discriminated against when she was evaluated as "excellent" on a criteria she believed did not apply to her position, while a white employee in the same job received an "outstanding" for the same criteria.

In responding to the question asking how the Plaintiff believed she was discriminated against, the Plaintiff appears to be articulating the corrective action she sought, stating:

> (1) All discrimination practices and disparity [sic] treatment cease. (2) Chris Brown [Plaintiff's supervisor] be removed. (3) I be given points for my job applications applied for during this time.(4) My performance evaluation be changed.

(*Id.*)

The Plaintiff's formal EEO complaint was accepted for processing and investigation. According to the letter advising the Plaintiff that her complaint had been accepted for processing, the investigation would examine "whether [the Plaintiff was] allegedly discriminated against, because of [her] race (black), when [she] received a lesser rating than [her] white counterpart in performing an identical function." (Opposition Ex. I Letter from Director of GPO's EEO Office to the Plaintiff of 12/31/97.) Clearly, the GPO understood the Plaintiff's discrimination complaint to encompass only her lower performance evaluation and nothing more. The Court emphasizes that during this time the Plain-

tiff was represented by counsel, but she provides no evidence that she attempted to amend her formal EEO complaint to clarify her claim.

On July 13, 1998, the Plaintiff filed suit against the GPO under Title VII, claiming race discrimination, hostile work environment, and retaliation for attempting to eliminate the racial discrimination. (Complaint at 2–3.) The Defendant filed a Motion to Dismiss [17] arguing that the Plaintiff's discrimination claim was not actionable because it did not rise to the level of an adverse action and that her hostile work environment and retaliation claims were barred for her failure to exhaust administrative remedies because they were not included in the Plaintiff's administrative complaint. (Defendant's Motion to Dismiss at 1, 4–7.)

The Trial Court denied the Motion to Dismiss. With respect to the discrimination claim, the Trial Court concluded that the Plaintiff had "minimally satisfied the pleading requirement for an adverse employment action." (Memorandum Opinion and Order [28] at 5.) With respect to the hostile work environment claim, the Trial Court found that the Plaintiff's EEO complaint, which requested that "all discrimination practices and disparity [sic] treatment cease," could be interpreted as either raising or being reasonably related to a hostile work environment claim. (*Id.* at 6–7.) The Trial Court concluded that the Plaintiff had exhausted her administrative remedies for the hostile work environment claim. (*Id.*) The Trial Court also determined that most courts do not require administrative exhaustion of retaliation claims which arise after the filing of an administrative complaint. (*Id.* at 7.) Because the Complaint did not specify when the alleged retaliation occurred, the Trial Court denied the motion to dismiss the retaliation claim. (*Id.* at 7–8.)

On August 29, 2001, the case was assigned to the undersigned United States Magistrate Judge for all purposes including trial with the consent of all parties. (Consent to Proceed Before a United States Magistrate [31].) The parties have completed discovery in this matter and the Defendant has now moved for summary judgment. The Defendant seeks judgment on all claims on grounds that (1) the Plaintiff has failed to timely exhaust her administrative remedies for any of her claims and (2) the Plaintiff cannot establish a *prima facie* case of racial discrimination, hostile work environment, or retaliation. (Motion at 1.)

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if the pleadings and evidence show that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. However, the nonmoving party must present more than a "scintilla of evidence" and must come forward with specific facts that would enable a reasonable jury to find in its favor. *Id.* at 252, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the evidence presented by the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

■ In the context of discrimination cases, summary judgment should be approached with special caution because of the difficulty of proving discriminatory intent and disparate treatment. *Morgan v. Federal Home Loan Mortgage Corp.*, 172 F.Supp.2d 98, 104 (D.D.C.2001) ("While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of [his] obligation to support [his] allegations by affidavits or other competent evidence showing that there is a genuine issue for trial.") (quoting *Calhoun v. Johnson,* Civil No. 95–2397, 1998 WL 164780 at *3 (D.D.C. Mar. 31, 1998)) (citation omitted); *Ross v. Runyon,* 859 F.Supp. 15, 21–22 (D.D.C.1994). However, this does not eliminate the use of summary judgment in discrimination cases. *See, e.g., Clark County School District v. Breeden,* 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (finding that District Court's grant of summary judgment was proper and overturning Court of Appeals decision that reversed District Court); *Forkkio v. Powell,* 306 F.3d 1127, 1132 (D.C.Cir.2002) (upholding grant of summary judgment for defendant in Title VII case alleging racial discrimination and retaliation); *Brown v. Brody,* 199 F.3d 446, 448 (D.C.Cir.1999) (upholding grant of summary judgment for defendant in Title VII suit alleging racial and gender discrimination and retaliation). Summary judgment is not a "disfavored procedural shortcut," but is an integral procedural tool which promotes the speedy and inexpensive resolution of every case. *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. 2548.

### B. Legal Standard for Title VII Claims.

*(1) Burden–Shifting Framework Governing Title VII Claims.*

■ In *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973), the Supreme Court established a burden-shifting framework that governs the analysis of racial discrimination and retaliation claims. *See, e.g., Aka v. Washington Hospital Center,* 156 F.3d 1284, 1288–89 (D.C.Cir.1998); *Richard v. Bell Atlantic Corp.,* 165 F.Supp.2d 1, 6–7 (D.D.C.2001); *Hastie v. Henderson,* 121 F.Supp.2d 72, 78 (D.D.C.2000). The plaintiff bears the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Then the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the action. *Id.* If the defendant meets this burden, then the presumption of discrimination is rebutted and drops from the case. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The plaintiff must then show that the articulated reason was a pretext and the actual reason was discriminatory. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. At all times, the ultimate burden of persuasion remains with the plaintiff to prove that she was subjected to discrimination. *Hicks,* 509 U.S. at 507–08, 113 S.Ct. 2742.

■ The requirements for a *prima facie* case of racial discrimination are flexible and vary depending on the type of case. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. Here, to establish a claim of discrimination, the Plaintiff must prove that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; and (3) the adverse action gives rise to an inference of discrimination. *Stella v. Mineta,* 284 F.3d 135, 144–45 (D.C.Cir.2002) (citing *Brown v. Brody,* 199 F.3d at 452).

■ A *prima facie* case of retaliation requires the Plaintiff to prove that (1) she engaged in statutorily protected activity; (2) the employer subjected her to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Brodetski v. Duffey,* 199 F.R.D. 14, 19 (D.D.C.2001); *Hastie,* 121 F.Supp.2d at 79–80. Causation is often demonstrated by temporal proximity, and "[a]lthough courts have not established the maximum time lapse between protected Title VII activity and alleged retaliatory actions for establishing a causal connection, courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length." *Brodetski,* 199 F.R.D. at 20.

*(2) Administrative Procedures and Exhaustion Requirements.*

In 42 U.S.C. § 2000e–16, Congress granted the EEOC broad authority to enforce within the federal government the Civil Rights Act's anti-discrimination purposes. *See, e.g., Bowden v. United States,* 106 F.3d 433, 437 (D.C.Cir.1997). This broad power includes the authority to promulgate regulations controlling the manner in which federal agencies process discrimination complaints. *Id.* Under this authority, the EEOC has issued "detailed procedures for the administrative resolution of discrimination complaints, including a series of time limits for seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions to the [EEOC]." *Id.* Complainants are required to timely exhaust administrative remedies before filing suit in court. *Id.* However, these time limits are similar to statutes of limitations in that they do not create a jurisdictional bar to bringing suit and are subject to equitable tolling, estoppel, and waiver. *Id.*

■ Under the EEOC's regulations, an aggrieved employee must contact an EEO counselor within 45 days of the alleged discriminatory act or the effective date of

the action. 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved through the informal counseling process, then the aggrieved employee must file a formal written complaint with the agency that allegedly discriminated against her within 15 days of receiving the notice of the right to file a discrimination complaint provided for in 29 C.F.R. § 1614.105(d), (e), or (f). 29 C.F.R. § 1614.106(a)-(c). The administrative charge requirement is not intended to impose a heavy, technical burden on complainants, but is provides the employer with notice of the claim and narrows the issues. *See, e.g., Park v. Howard University,* 71 F.3d 904, 907 (D.C.Cir.1995). Therefore, a Title VII suit following an EEO complaint is limited to "claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id.* (quoting *Cheek v. Western & Southern Life Insurance Co.,* 31 F.3d 497, 500 (7th Cir.1994) (citations and internal quotations omitted)). After the written complaint is filed, the agency must then investigate the claim within 180 days or reject the complaint and issue a final dismissal. 29 C.F.R. §§ 1614.106(e), 1614.107.

At the end of the agency's investigation, the employee can request a hearing before an administrative law judge ("ALJ") or request an immediate final agency decision. 29 C.F.R. § 1614.108(f). If an ALJ hearing is held, the ALJ issues factual and legal conclusions which are transmitted to the agency as a recommended decision. 29 C.F.R. § 1614.110(a). The agency then issues a final decision. 29 C.F.R. § 1614.110. An employee who receives a final adverse decision may appeal the decision to the EEOC within 30 days or file a civil action within 90 days. 29 C.F.R. §§ 1614.401, 1614.402, 1614.407(a). If the employee appeals the decision to the EEOC, she must file a civil action within 90 days of receiving the EEOC's decision.

29 C.F.R. § 1614.407(c). She may also file a civil action any time after her complaint has been pending before the agency or the EEOC for at least 180 days. 42 U.S.C. § 2000e–16(c); 42 U.S.C. § 2000e–5(f)(1); 29 C.F.R. § 1614.407(b).

■ As set forth above, compliance with these procedures is mandatory. The Supreme Court recently emphasized that " 'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002) (quoting *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)). Failure to comply with these requirements does not erect a jurisdictional bar to suit, but is an affirmative defense which the defendant must plead and prove. *Morgan,* 122 S.Ct. at 2076–77; *Bowden,* 106 F.3d at 437. This affirmative defense, like a statute of limitations, is subject to equitable tolling, estoppel, and waiver, but these equitable remedies must be applied *sparingly. Morgan,* 122 S.Ct. at 2072, 2076–77; *Bowden,* 106 F.3d at 437; *Jarmon v. Powell,* 208 F.Supp.2d 21, 26 (D.D.C.2002).

## III. ANALYSIS

### A. The Plaintiff's Discrimination Claims.

The Plaintiff's discrimination claim has three separate components. First, the Plaintiff contends that she received a lower performance evaluation than her white counter-part based on her race. (Motion at 4–8; Opposition at 5–6.) Second, the Plaintiff alleges that she was denied promotional opportunities. (Motion at 8–10.) Third, she claims that she was denied training opportunities because of her race. (*Id.* at 10.) Because the Plaintiff has

failed to timely exhaust her administration remedies with respect to these claims and she has not established any basis for equitable relief to excuse her failure, the Plaintiff's claims are barred.

*(1) The Plaintiff's Discrimination Claims Are Barred for Failure to Timely Exhaust Her Administrative Remedies.*

(a) The Plaintiff's "Excellent" Performance Evaluation.

■ The Plaintiff claims that on October 8, 1996, she was discriminated against when she received an "excellent," rather than "outstanding," performance evaluation on one element of her performance review. As required by the federal regulations, the Plaintiff contacted an EEO counselor on October 17, 1996 which was within 45 day time limit imposed by the federal regulations. 29 C.F.R. § 1614.105(a)(1). When the counselor was unable to informally resolve the Plaintiff's claim, he advised her of her right to file a formal EEO complaint and the 15 day deadline to file such a claim. However, the Plaintiff did not file her claim within 15 days. Instead, her formal complaint was post-marked January 9, 1997 and was received by the EEO Office on January 16, 1997. (Motion at 6–7 and Ex. 4 Envelope enclosing Complaint of Discrimination.) Because the Plaintiff failed to comply with the regulatory requirements, her claims are barred.

Timely exhaustion of administrative remedies is mandatory; however, as noted above, a failure to exhaust does not erect a jurisdictional bar to suit. Instead, as here, the Defendant may assert failure to exhaust as an affirmative defense subject to equitable tolling, estoppel, and waiver which must be applied *sparingly*. *Morgan*, 122 S.Ct. at 2072, 2076–77; *Bowden*, 106 F.3d at 437; *Jarmon*, 208 F.Supp.2d at 26. The Plaintiff has demonstrated no entitlement to these equitable doctrines to excuse her failure to exhaust. In response to the detailed discussion and analysis provided by the Defendant on the issue of administrative exhaustion, the Plaintiff responds with a brief paragraph seven lines in length. (Opposition at 4.) The Plaintiff characterized the Defendant's failure to exhaust argument dismissively, as "a waste of time." She provides the Court with no basis for applying equitable relief to excuse her failure to exhaust. (*Id.*) She asserts in a conclusory fashion that her claims are related to her 1997 EEO complaint and that therefore she has complied with the exhaustion requirements. (*Id.*)

■ The Plaintiff apparently misperceives the Defendant's exhaustion argument with respect to the discrimination claims. The Defendant points to the Plaintiff's failure to *timely* exhaust her administrative remedies, that is, to comply with the deadlines set out in the federal regulations. (Motion at 5–8.) The Court finds, based on the undisputed evidence, that the Plaintiff failed to timely exhaust her administrative remedies in that she did not file her EEO complaint within the applicable deadline and finds further that there is no basis for equitable tolling, estoppel, or waiver. Accordingly, the Court concludes that the Plaintiff's discrimination claim based on her lower performance rating is barred.[1]

---

1. The Court notes that even if the Plaintiff's formal EEO complaint had been timely, she cannot make out a *prima facie* case of discrimination because her "excellent" performance rating on one element is not an adverse employment action. The Plaintiff received an "outstanding" rating for five of the six criteria and an "excellent" rating for the sixth criteria for an overall "excellent" performance evaluation. The Plaintiff has offered no evidence demonstrating any negative or adverse consequences flowing from this evalua-

**(b) The Plaintiff's Promotional Opportunities.**

■ The Plaintiff alleges she was discriminated against by being denied four promotional opportunities; the Plaintiff has not provided detailed information or dates for these incidents. (Motion at 8–10, 14–16.) For the first printing assistant position, the Plaintiff determined at some time in 1992 that she had been discriminated against. At some point in 1995, the Plaintiff concluded she had been subjected to discrimination in being denied a printing specialist position. The Plaintiff determined sometime closer to 1996 that she had been discriminated against in the non-selection for a financial management position. With respect to a second printing assistant position, she believed she was discriminated against some time in June or July of 1999.[2] The Plaintiff did not contact an EEO counselor as required by the federal regulations within 45 days of any of these alleged discriminatory events. In fact, the Plaintiff *never* contacted an EEO counselor or filed an EEO complaint regarding any of these four positions and, as noted above, the Plaintiff offered no basis for equitable relief. Therefore, the Plaintiff's claim of discrimination relating to promotional opportunities is barred for failure to exhaust her administrative remedies.

**(c) The Plaintiff's Training Opportunities.**

■ The Plaintiff alleges she was discriminated against on two occasions when she did not receive training. (Motion at 10.) The first incident occurred in 1995 and the second incident occurred in

tion; instead, Plaintiff contends that she lost "prestige" and was denied the opportunity "to receive a certificate printed on a single sheet of paper attesting that she has received an overall 'outstanding' performance rating." (Opposition at 5.) The GPO has submitted a declaration from the Director of the Office of Labor and Employee Relations at the GPO stating that there are no monetary awards, comp time, quality step increases, or other benefits available to employees who receive an overall "outstanding" performance evaluation; instead, the employee "is entitled to receive a certificate printed on a *single sheet* of paper attesting that the employee has received an overall 'outstanding' performance evaluation." (Motion at 12 and Ex. 13 Declaration of Neal H. Fine ("Fine Decl.").) Consequently, the "excellent" evaluation does not rise to the level of an adverse action and the Plaintiff cannot establish a *prima facie* case of discrimination. *See, e.g., Brown v. Brody*, 199 F.3d 446, 458 n. 11 (D.C.Cir.1999) (where performance evaluation was "fully satisfactory" even though lower than plaintiff's usual evaluation the court found that the weight of authority is against the proposition that such an evaluation is an adverse action and citing cases); *Mack v. Strauss*, 134 F.Supp.2d 103, 111–12 (D.D.C.2001) (concluding that to constitute an adverse action, a *negative* perform-ance evaluation must have "a tangible impact on the terms and conditions" of plaintiff's employment).

2. The Court notes that the Plaintiff's lawsuit was filed on July 13, 1998 and therefore her claim regarding the 1999 incident is not before the Court. The Plaintiff has not amended or moved to amend her complaint since filing this suit. The scope of Title VII claims in a civil action depends on the underlying EEO complaint. "A Title VII lawsuit following the EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Park v. Howard University*, 71 F.3d 904, 907 (D.C.Cir.1995) (quoting *Cheek v. Western & Southern Life Insurance Co.*, 31 F.3d 497, 500 (7th Cir.1994)). "At a minimum, the Title VII claim must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Id.* at 907 (quoting *Chisholm v. United States Postal Service*, 665 F.2d 482, 491 (4th Cir.1981)). Because these claims post-date the filing of this Complaint by four years and do not logically arise from the Plaintiff's previous administrative complaint filed in January 1997, these claims are not before the Court.

1999.[3] As with the Plaintiff's allegations relating to promotional opportunities, (*supra* III.A.(1)(b)), the Plaintiff *never* contacted an EEO counselor or filed an EEO complaint alleging the denial of training. Again the Plaintiff has failed to exhaust her administrative remedies and failed to demonstrate she is entitled to equitable relief from these requirements; therefore, the Plaintiff's discrimination claim regarding training opportunities is barred.[4]

### B. The Plaintiff's Hostile Work Environment Claims.

Plaintiff's Complaint alleges that the Defendant "created a hostile work environment" based on her race. (Complaint at 2–3.) The Plaintiff's 1997 EEO complaint does not allege a hostile work environment claim. However, in denying the Defendant's Motion to Dismiss based on the Plaintiff's failure to exhaust her administrative remedies with respect to the hostile work environment claim, the Trial Court, treating the motion as a motion for summary judgment, concluded that the hostile work environment claim was either raised in the EEO complaint or was reasonably related to it to satisfy the exhaustion requirement. (Memorandum Opinion [28] at 6–7.) The Defendant notes that the Plaintiff herself has stated that the first time she filed a formal EEO complaint alleging hostile work environment was on October 3, 2002. (Motion at 17–18 and Ex. 18 Deposition of Dianne Marshall ("Marshall Depo.") at 131–32.) The Plaintiff explained that she did not file an EEO complaint alleging hostile work environment prior to October 3, 2002 because she was trying to resolve the disputes and "giving the manager the benefit of the doubt." (*Id.* Ex. 18 Marshall Depo. at 132.) While it is not at all clear that the Plaintiff was in fact alleging hostile work environment in her 1997 EEO complaint, this Court will abide by the initial Trial Court's conclusion that the hostile work environment claim was either raised or sufficiently related to the 1997 EEO complaint to satisfy the formal filing requirement.

There is no dispute that the hostile work environment claim which is the subject of the Plaintiff's October 3, 2002 administrative complaint is not now before the Court. The instant lawsuit was filed on July 13, 1998; the Plaintiff has not amended her Complaint, and this suit does not encompass claims arising four years after she filed the Complaint in this Court.[5] *See, e.g., Park*, 71 F.3d at 907 (stating "[a] Title

---

3. The Court notes that the Plaintiff's lawsuit was filed on July 13, 1998 and therefore her claim regarding the 1999 incident is not before the Court. These claims post-date the filing of this Complaint by one year and do not logically arise from the Plaintiff's 1997 administrative complaint. *Park*, 71 F.3d at 907.

4. Even if Plaintiff's discrimination claim regarding training was not barred for her failure to exhaust, the Plaintiff cannot make out a *prima facie* case of discrimination because she has not offered any evidence to show that a similarly situated non-African American employee received the training she sought. *See, e.g., Robinson v. Detroit News, Inc.*, 211 F.Supp.2d 101, 112 (D.D.C.2002) (*prima facie* case requires plaintiff prove that similarly situated employees who are members outside

her protected class received training that she was denied).

5. The Defendant argues that the Plaintiff has not exhausted her administrative remedies with respect to her hostile work environment claim which is the subject of the October 3, 2002 administrative complaint. (Motion at 17–18.) As the Defendant correctly observes, the federal regulations provide that a complainant who timely files an administrative complaint may file a civil suit in federal court either within 90 days after receiving notice of the final administrative decision or after 180 days if the agency has not yet issued a decision. 42 U.S.C. § 2000e–16(c); 42 U.S.C. § 2000e–5(f)(1); 29 C.F.R. § 1614.408(a) and (b); *see also Martini v. Federal National Mortgage Association*, 178 F.3d 1336, 1339–40

VII lawsuit following the EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations'" and "[a]t a minimum, the Title VII claim must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'") (quoting *Cheek*, 31 F.3d at 500 and quoting *Chisholm*, 665 F.2d at 491).

▮▮▮ The Defendant now raises an additional exhaustion argument. As set forth above, the Plaintiff failed to file her formal EEO complaint within the 15 day deadline established by the federal regulations. Therefore, even if the Plaintiff's hostile work environment claim was raised in the 1997 EEO complaint or reasonably related to it, the Plaintiff's claim is barred for her failure to timely exhaust her administrative remedies and there is no basis for applying equitable remedies to excuse this failure.[6]

(D.C.Cir.1999) (concluding EEOC's issuance of early right-to-sue letters was invalid and ruling that "Title VII complainants must wait 180 days after filing charges with the EEOC before they may sue in federal court."). The Plaintiff has not complied with these provision and therefore, the hostile work environment claim which is the subject of the October 3, 2002 administrative complaint is not before the Court.

6. The Court notes that even if the Plaintiff's putative 1997 hostile work environment claim was not barred on exhaustion grounds, the Plaintiff has failed to provide sufficient evidence to establish a *prima facie* case and survive summary judgment on this claim. In order to establish a claim of hostile work environment under Title VII, the plaintiff must prove that the "workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations omitted). To establish a *prima facie* case of hostile work environment, the plaintiff must prove: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment occurred as a result of her protected status; (4) the harassment affected the terms, conditions, or privileges of her employment; and (5) her employer knew or should have known of the harassment, but did not take action to prevent it. *See, e.g., Crenshaw v. Georgetown University*, 23 F.Supp.2d 11, 15 (D.D.C.1998); *Jones v. Billington*, 12 F.Supp.2d 1, 11 (D.D.C.1997). The Supreme Court has emphasized that to be actionable under Title VII, the conduct must be sufficiently severe and pervasive, a "mere utterance of an ... epithet which engenders offensive feelings in an employee" does not rise to this level. *Harris*, 510 U.S. at 21, 114 S.Ct. 367 (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The conduct must be "severe or pervasive enough to create an *objectively* hostile work environment—an environment that a *reasonable* person would find hostile or abusive." *Id.* (emphasis added).

In support of her claim for hostile work environment, the Plaintiff asserts that (1) she was harassed and alienated; (2) was not assigned meaningful work; and (3) a supervisor stated that he treated African American and white employees differently. (Motion at 20.) With respect to the harassment and alienation, the Plaintiff makes the following series of allegations: she was denied training; an employee stopped by the Plaintiff's cubicle and looked inside and also filed a union grievance against the Plaintiff; another employee complained that the Plaintiff notified management that he was playing on computers during work time; for several hours at some point in 1996 a sign "no bitches allowed" was placed in a chair (not Plaintiff's chair); and she claims to have overheard a male co-worker remark to two other male co-workers about a female employee's (not Plaintiff) "fat behind."

To begin with, the Plaintiff offers no evidence that any of these alleged events had any relationship to race, which is the basis of her hostile work environment claim. In addition, none of these allegations, either alone or collectively, rise to the level of severe or pervasive conduct which a *reasonable* person would find created a hostile or abusive work environment. For example, as part of her hostile

### C. The Plaintiff's Retaliation Claims.

The Plaintiff alleges more than 30 separate claims of retaliation. To establish a *prima facie* case of retaliation, the Plaintiff must prove that (1) she engaged in statutorily protected activity; (2) the employer subjected her to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Brodetski*, 199 F.R.D. at 19; *Hastie*, 121 F.Supp.2d at 79–80. Causation is often demonstrated by temporal proximity, and "[a]lthough courts have not established the maximum time lapse between protected Title VII activity and alleged retaliatory actions for establishing a causal connection, courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length." *Brodetski*, 199 F.R.D. at 20.

 As discussed above, most courts have determined that a plaintiff is not required to exhaust her administrative remedies with respect to claims of retaliation that occurred *after* the filing of an administrative complaint. (Memorandum Opinion [28] at 6–7.) *Sussman v. Tanoue*, 39 F.Supp.2d 13, 21 (D.D.C.1999) ("most courts have concluded plaintiffs are not required to exhaust administrative remedies for claims of retaliation which arise following the filing of administrative complaints"); *Webb v. District of Columbia*, 864 F.Supp. 175, 184 (D.D.C.1994). This Court is not aware, and the parties have not identified, cases in this Circuit that differentiate between exhaustion requirements for allegations of retaliation that occur before an EEO complaint is filed and after an EEO complaint is filed; however, several other circuits, and the Seventh Circuit in particular, have addressed this issue. *See, e.g., Heuer v. Weil–McLain*, 203 F.3d 1021, 1023 (7th Cir. 2000); *McKenzie v. Illinois Department of Transportation*, 92 F.3d 473, 481–83 (7th Cir.1996). In *McKenzie*, the court was faced with a situation where the events the plaintiff claimed were retaliatory occurred both before and after she filed her EEO complaint, but her EEO complaint did not mention her retaliation claim. *McKenzie*, 92 F.3d at 481. The court reviewed cases from other circuits and concluded that a plaintiff need not exhaust administrative remedies for a retaliation claim which grows out of an earlier EEO complaint. *Id.* at 482. Citing a Fifth Circuit opinion, the court explained that

> [i]t is the nature of retaliation claims that they arise after the filing of the EEO charge. Requiring prior resort to the EEOC would mean that two charges

work environment claim, the Plaintiff contends that she was not assigned meaningful work and was required to write or stamp numbers on file folders. This allegation does not rise to the level required for a hostile work environment claim. The Plaintiff also alleges that a supervisor stated that he treated African American and white employees differently. As set forth above, even assuming this allegation to be true and interpreting it as evidencing discriminatory animus, it does not rise to the level of conduct actionable as a hostile work environment under Title VII. The " 'mere utterance of an.. epithet which engenders feelings in an employee,' ... does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21, 114 S.Ct. 367 (citations omitted). The Plaintiff's claims do not rise to the level of conduct actionable under Title VII. The Supreme Court has established with great specificity that the Title VII "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' Properly applied, they will filter out complaints attacking 'the ordinary tribulations of workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citations omitted).

would have to be filed in a retaliation case—a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII.

*Id.* at 482 (quoting *Gupta v. East Texas State University,* 654 F.2d 411, 414 (5th Cir.1981)).

The Sixth and Seventh Circuits have further refined this standard, distinguishing between administrative exhaustion requirements for retaliation claims that arise *before* an EEO complaint and *after* an EEO complaint. The *McKenzie* court explained that where a case involves alleged retaliation that arose *after* the filing of the EEO complaint, then a single EEO complaint fulfills the purposes of the Title VII filing requirements and "a double filing 'would serve no purpose except to create additional procedural technicalities.'" *Id.* at 482–83 (quoting *Steffen v. Meridian Life Insurance Co.,* 859 F.2d 534, 545 (7th Cir.1988)). This circumstance is distinguishable from the situation in which a plaintiff has already suffered from alleged acts of retaliation at the time she files her

first EEO complaint. Under the latter circumstance, the Sixth and Seventh Circuits have required a plaintiff to include a retaliation claim in her EEO complaint in order to preserve that claim. *Id.* at 483; *see also Ang v. Procter & Gamble Co.,* 932 F.2d 540, 547 (6th Cir.1991). This Court finds this reasoning compelling and will follow this approach in analyzing the retaliation claims now before the Court.

*(1) The Plaintiff's Retaliation Claims That Arose Before Her January 1997 Equal Employment Opportunity Complaint Are Barred For Failure to Exhaust Administrative Remedies.*

In the instant case, the Plaintiff asserts retaliation claims that occurred both before and after she first filed an EEO complaint in January of 1997. Her EEO complaint did not assert a retaliation claim and she has not demonstrated entitlement to equitable relief to excuse this failure; thus, any alleged retaliation that occurred before the filing of her EEO complaint in January of 1997 is barred for failure to exhaust administrative remedies.[7] *See,*

---

**7.** Additionally, the Court observes that the Plaintiff first engaged in protected activity on March 21, 1994 by writing a single page memorandum to the Deputy Public Printer at GPO complaining about what she described as discriminatory practices. (Motion at 30–31.) In *Parker v. B & O Railroad Co.,* the D.C. Circuit concluded that the scope of statutorily protected activity under § 2000e–3(a) must be broad in order to promote the purposes of Title VII and includes opposition to allegedly discriminatory practices outside the EEOC process. *Parker v. B & O Railroad Co.,* 652 F.2d 1012, 1019 (D.C.Cir.1981). The Circuit Court went on to explain that "by extending protection to employees who opposed discriminatory practices without recourse to the EEOC, Congress encouraged voluntary attempts to remedy discrimination." *Id.* Therefore, with respect to any alleged acts of retaliation that occurred *before* March 21, 1994, the Plaintiff cannot make out a *prima facie*

case of retaliation because she cannot satisfy the first prong; consequently, these claims cannot survive summary judgment. Furthermore, this Court has serious doubts as to the viability of retaliation claims which the Plaintiff alleges resulted from the submission of a single page memorandum in 1994. The memorandum was not widely circulated and the GPO submitted declarations from several witnesses who are alleged to have engaged in retaliatory acts against the Plaintiff that state they were not aware of the memorandum until being questioned about it during the course of this litigation. (Motion at 33, 34–35, 40, 46–47, 48, 50, 53 & n. 35 and Ex. 6 Declaration of Neal H. Fine ("Fine Decl."), Exhibit 7 Declaration of Chris J. Brown ("Brown Decl."), Ex. 8 Declaration of Pearl V. Smith ("Smith Decl.").) Because these witnesses were not aware of the Plaintiff's protected activity, any alleged actions they

*e.g., Sussman,* 39 F.Supp.2d at 21; *McKenzie,* 92 F.3d at 483.[8] The following claims are barred by her failure to exhaust her administrative remedies: (1) allegation that in 1994 or 1995 Neil Fine told the Department of Labor not to pay the Plaintiff's workers' compensation claim (Motion at 31); (2) allegation that the Plaintiff was denied overtime by Mr. Crawford in 1992, 1993, and 1994 (*id.* at 34); (3) allegation that the Personnel Department failed to properly consider her experience and ratings when considering her job applications for a financial analyst position in 1993,[9] a printing specialist position in 1993, and an inventory management specialist position in 1993 (*id.* at 36–38); (4) allegation that John Shay intentionally misinformed her regarding the usage of sick leave while her workers' compensation claim was being processed in 1995 (*id.* at 38–39); (5) allegation that in 1995, the Plaintiff's supervisor, Chris Brown, retaliated against her by refusing to purchase a special chair requested by her physician after her injury although the chair was available for the

took against the Plaintiff could not have been retaliatory.

**8.** Even if the claims that predated the Plaintiff's 1997 EEO complaint were not barred for her failure to exhaust, the Plaintiff has not established a *prima facie* case for any of these allegations. Many of the alleged incidents took place *before* the Plaintiff first engaged in statutorily protected activity by submitting the March 21, 1994 memorandum to the Deputy Public Printer. In addition, the Plaintiff has failed to demonstrate that any of the individuals who allegedly retaliated against her *were aware* of this memorandum prior to the filing of this lawsuit. If these individuals did not know about this memorandum, any actions they allegedly took against the Plaintiff before she filed the 1997 EEO complaint could not be retaliatory. Furthermore, none of the alleged retaliatory acts rise to the level of an adverse employment action and the Plaintiff cannot establish causation for many of her allegations.

For example, the Plaintiff alleges that Neil Fine, the Director of Labor and Employee Relations at the GPO, contacted the Department of Labor ("DOL") and urged them not to pay the Plaintiff's occupational work compensation claim ("OWCP"). (Motion at 31.) The Plaintiff filed the claim after she allegedly fell out of her chair at work and suffered injuries. (*Id.*) The Plaintiff provides absolutely no evidence in support of her allegation. In lieu of credible evidence, she speculates that Mr. Fine contacted the DOL, urged them not to pay her for her OWCP, and that the DOL would follow such a recommendation. (*Id.* at 31–32.) Such speculative claims cannot survive a motion for summary judgment. In fact, the Plaintiff was seen regularly by a medical doctor who provided weekly reports regarding her condition to DOL and DOL denied her claim for compensation, explaining that "the medical evidence of record failed to establish that [plaintiff] has injury related disability." (*Id.* at 32.) This decision was affirmed by the Office of Workers' Compensation Programs. (*Id.* at 32 and Ex. 12 Compensation Order Denying Modification of Prior Order.) Consequently, the Plaintiff cannot establish a *prima facie* case with respect to this claim. In addition, the Court notes that because Mr. Fine was not aware of the Plaintiff's protected activity in 1994, any alleged actions he took against the Plaintiff could not have been retaliatory.

**9.** Even if the Plaintiff's failure to exhaust her administrative remedies was excused, she cannot establish a *prima facie* case of retaliation because the vacancy for the financial analyst position was canceled. (Motion at 36.) *McDonnell Douglas v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a claim for non-selection, the Plaintiff must prove that (1) she is a member of a protected class; (2) she was qualified for a position the employer sought to fill; (3) she was not selected by the employer; and (4) *the employer continued to seek applicants with plaintiff's qualifications. McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Stella v. Mineta,* 284 F.3d 135, 144–45 (D.C.Cir.2002) (citing *Brown,* 199 F.3d at 452). Because the vacancy was canceled, the Plaintiff cannot satisfy this burden unless she can show the vacancy was withdrawn to thwart her selection. The Plaintiff has offered no such evidence; therefore, the Defendant is entitled to summary judgment on this claim.

Plaintiff when she returned to work (*id.* at 39–40); (6) allegation that she was assigned to the Rapid Response Center in 1992 or 1993[10] (*id.* at 40–41); (7) allegation that John Shay encouraged her physician, because of the cost to the taxpayers, to stop examining her and providing medical forms to GPO during the processing of her workers' compensation claim in 1995 (*id.* at 42); (8) allegation that the Plaintiff's supervisor, Chris Brown, stated in 1994 that he "discriminates against [his] black employees sometimes" (*id.* at 46–46); (9) allegation that Pearl Smith retaliated against her by failing to process one of her paychecks through direct deposit causing a one or two day delay in the deposit in 1995 (*id.* at 48–49); (10) allegation that her supervisor, Chris Brown, retaliated against her by not assigning her any work for several months during 1993[11] (*id.* at 49); (11) allegation that her workers' compensation claim was mishandled in 1995 because her supervisor, Chris Brown, represented that she was at work on a particular day and that he failed to turn in a form which she gave him and the GPO OWCP office claims it never received (*id.* at 50–51); and (12) allegation that the GPO miscalculated the amount of funds she was to receive during the processing of her workers' compensation claim in 1995 (*id.* at 51–52).

### (2) The Plaintiff Has Failed to Exhaust Her Administrative Remedies With Respect to the Retaliation Claims

That Are the Subject of Her October 3, 2002 Equal Employment Opportunity Complaint and Those Claims are Not Presently Before This Court.

The federal statute and the federal regulations provide, in relevant part, that a complainant may file a civil action in federal court either within 90 days after receiving notice of the final administrative decision or any time after her complaint has been pending before the agency or the EEOC for at least 180 days. 42 U.S.C. § 2000e–16(c); 42 U.S.C. § 2000e–5(f)(1); 29 C.F.R. § 1614.407. The Defendant contends that the Plaintiff's claims that are the subject of the October 3, 2002 administrative complaint are barred because she has failed to exhaust her administrative remedies with respect to these claims.

▮ In *Martini v. Federal National Mortgage Association,* the D.C. Circuit, addressed the question of whether the EEOC's practice of issuing early right-to-sue letters, which authorized complainants to file suit before the expiration of 180 days, violated the federal statute establishing a 180 day waiting period before a complainant may file suit in federal court. 178 F.3d 1336, 1339–40 (D.C.Cir.1999). Through a detailed examination of the federal statute, 42 U.S.C. § 2000e–5(f)(1), the federal regulations, and the legislative history, the D.C. Circuit concluded that the issuance of early right-to-sue letters was

---

**10.** Not only is this claim barred because of the Plaintiff's failure to exhaust her administrative remedies, but this occurred *before* the Plaintiff engaged in statutorily protected activity. Consequently, the Plaintiff cannot establish a *prima facie* case on this claim and the Defendant is entitled to summary judgment.

**11.** Not only is this claim barred because of the Plaintiff's failure to exhaust her administrative remedies, but this occurred *before* the Plaintiff engaged in statutorily protected activity. Consequently, the Plaintiff cannot establish a *prima facie* case on this claim and the Defendant is entitled to summary judgment.

invalid and that "Title VII complainants must wait 180 days after filing charges with the EEOC before they may sue in federal court." *Id.* at 1347. The 180 days waiting requirement is not jurisdictional and is subject to the same equitable considerations applicable to other exhaustion requirements. *Id.* at 1348. Consequently, the claims which are the subject of the Plaintiff's October 3, 2002 administrative complaint are not ripe for consideration by a federal court. *Id.* at 1347–48; *Thompson v. Jasas Corporation*, 212 F.Supp.2d 21, 28 (D.D.C.2002) (dismissing without prejudice plaintiff's claim filed before 180 days after filing her EEO claim); *accord Knopp v. Magaw*, 9 F.3d 1478, 1479 (10th Cir.1993) (ruling that because plaintiff had not waited requisite 180 days before filing suit under Title VII, district court did not have subject matter jurisdiction to hear his request for preliminary injunction); *see also Thompson v. West*, 883 F.Supp. 1502, 1509 (M.D.Ala.1995) (dismissing plaintiff's claims that were the subject of an administrative complaint filed 176 days before filing federal suit; court added "plaintiff's failure to exhaust her administrative remedies and comply with the requirement to wait 180 days before filing suit *could not be cured* by allowing the plaintiff to return to the administrative process") (emphasis added). The Court notes that, as with the other exhaustion issues, the Plaintiff has not demonstrated an entitlement to equitable considerations to excuse this failure.

 The claims that are the subject matter of the Plaintiff's October 3, 2002 administrative complaint are not presently before this Court. The Plaintiff filed this law suit on July 13, 1998 alleging she was discriminated against based on her race, was subjected to a hostile work environment, and was retaliated against for attempting to eliminate the racial discrimina-

tion. (Complaint at 2–3.) The Plaintiff has not amended or moved to amend her complaint since filing this suit. As set forth above, the scope of Title VII claims in a civil action depend on the underlying EEO complaint. In *Park*, the D.C. Circuit explained that "[a] Title VII lawsuit following the EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" 71 F.3d at 907 (quoting *Cheek*, 31 F.3d at 500). The Court went on to explain that "[a]t a minimum, the Title VII claim must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Id.* at 907 (quoting *Chisholm*, 665 F.2d at 491). The Plaintiff's October 3, 2002 claims appear to have arisen from her parking in the visitor's parking lot on July 23, 2002 and involve Dan Clurman. (Motion at 45–46 and Ex. 21 Complaint of Discrimination.) Because these claims post-date the filing of this Complaint by four years and do not logically arise from the Plaintiff's previous administrative complaint filed in January 1997, these claims are not before the Court.

*(3) The Plaintiff Has Failed to Establish a Prima Facie Case With Respect to the Alleged Retaliation that Occurred After Her January 1997 Equal Employment Opportunity Complaint.*

A *prima facie* case of retaliation requires the Plaintiff to prove that (1) she engaged in statutorily protected activity; (2) the employer subjected her to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Brodetski*, 199 F.R.D. at 19; *Hastie*, 121 F.Supp.2d at 79–80.

(a) The Plaintiff Has Failed to Prove that She Engaged in Statutorily Protected Activity for Certain of Her Retaliation Claims.

█ 42 U.S.C. § 2000e–3(a) provides in relevant part that it is unlawful for an employer to discriminate against an employee for opposing any practice made unlawful under this statute or for making a charge under the statute. The D.C. Circuit has determined that the scope of statutorily protected activity under § 2000e–3(a) must be broad in order to promote the purposes of Title VII and includes opposition to allegedly discriminatory practices outside the EEOC process. *Parker v. B & O Railroad Co.*, 652 F.2d 1012, 1019 (D.C.Cir.1981). The Plaintiff first engaged in protected activity on March 21, 1994 by writing a single page memorandum to the Deputy Public Printer at GPO complaining about what she described as discriminatory practices. (Motion at 30–31.) The Defendant is entitled to summary judgment on any retaliation claims that arose *before* March 21, 1994 because the Plaintiff cannot satisfy the first prong of the *prima facie* case of retaliation.[12]

█ In addition, the Court has serious doubts as to the viability of retaliation claims which the Plaintiff alleges resulted from the submission of this memorandum. The memorandum was not widely circulated and the GPO submitted declarations from several witnesses who are alleged to have engaged in retaliatory acts against the Plaintiff that state they were *not aware* of the memorandum ' until being questioned about it during the course of this litigation. (Motion at 33, 34–35, 40, 46–47, 48, 50, 53 & n. 35 and Ex. 6 Fine Decl., Exhibit 7 Brown Decl., Ex. 8 Smith Decl.) Because these witnesses were not aware of the Plaintiff's protected activity, any alleged actions they took against the Plaintiff could not have been retaliatory.

(b) The Plaintiff Has Failed to Establish She Was Subjected to an Adverse Employment Action.

█ Many of the actions or events the Plaintiff contends are retaliatory fail to rise to the level of an adverse employment action. For example, the Plaintiff claims that her supervisor, Chris Brown, retaliated against her by *attempting* to reassign her in 1997. (Motion at 33.) The Plaintiff was not subjected to any adverse employment action because the Plaintiff was *not* reassigned. Consequently, the Plaintiff cannot survive summary judgment on this claim.

The Plaintiff claims that she was subjected to retaliation when the Personnel Department failed to properly consider her experience and ratings when considering her job applications for a printing plant worker/leader position. (*Id.* at 38.) The Plaintiff fails to establish when this allegedly occurred and has not demonstrated her compliance with the administrative exhaustion requirements. However, even if this event occurred after her 1997 EEO complaint and was not barred by her failure to exhaust administrative remedies, the Plaintiff cannot establish a *prima facie* case of retaliation because she offers nothing beyond mere speculation in support of her allegation. (*Id.* Ex. 15 Marshall Depo. at 95, 98, 100.) Consequently, the Defendant is entitled to summary judgment on this claim.

---

12. The Court notes that these claims are also barred by the Plaintiff's failure to timely exhaust her administrative remedies by including these allegations in her 1997 EEO complaint and by timely filing that administrative complaint after receiving the Notice of Final Interview with EEO Counselor.

Similarly, the Plaintiff contends that she was retaliated against when Neal Fine allegedly attempted to deny her request for back pay. (*Id.* at 41.) The Plaintiff offers no evidence in support of her claim and fails to establish the date when this occurred. Assuming that this occurred after her 1997 EEO complaint and was not barred by her failure to exhaust administrative remedies, the Plaintiff has not established a *prima facie* case of retaliation. She has no recollection of what role, if any, Neil Fine played in the back pay decision and offers nothing beyond speculation in support of her claim. Accordingly, the Defendant is entitled to summary judgment on this claim.

The Plaintiff alleges that she was subjected to retaliation when the Assistant United States Attorney assigned to this case filed a motion to dismiss the Plaintiff's claims and did not allow the Plaintiff to pursue her claim through Alternative Dispute Resolution. (*Id.* at 39.) The Plaintiff was not subjected to any adverse employment action and cannot establish a *prima facie* case on this claim. Therefore, the Defendant is entitled to summary judgment on this claim.

The Plaintiff alleges that she was retaliated against by Mel Call in 1997 when, during the closing of the Rapid Response Center plant, he did not laterally transfer her from her position as a printing plant worker grade 3 to a voucher examiner clerk position. (*Id.* at 42–43.) First, case law establishes that the denial of a lateral transfer on its own does not constitute an adverse employment action. *Brown,* 199 F.3d at 457 ("a plaintiff who is made to undertake or who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future opportunities"). The Plaintiff has not demonstrated any adverse consequences relating to this denial of a lateral transfer. Second, the Plaintiff has admitted that the transfer position probably would have paid her *less* than she was making in the position she held. (Motion at 43 and Ex. 15 Marshall Depo. at 108.) Consequently, the Plaintiff cannot establish a *prima facie* case of retaliation and the Defendant is entitled to summary judgment on this claim.

The Plaintiff alleges that the Personnel Department retaliated against her by failing to utilize rosters which included her name in filling positions at the GPO.[13] (*Id.* at 43–44.) However, the Plaintiff's claim is based entirely on speculation. She offers no evidence whatsoever in support of this allegation and admitted during her deposition that she has no evidence that even suggests that the rosters with her name were not utilized. (*Id.* at 43–44 and Ex. 15 Marshall Depo. at 115.) Therefore, the Plaintiff cannot establish a *prima facie* case and the Defendant is entitled to summary judgment on this claim.

The Plaintiff contends that she was subjected to retaliation when the Personnel Department allegedly refused to provide

---

**13.** The Court notes that the Plaintiff has not offered any evidence identifying the dates or time frame in which this alleged retaliation took place and has not demonstrated that she has exhausted her administrative remedies for this claim. However, the Court has conducted its analysis as if the alleged retaliation occurred after her EEO complaint in 1997. Of course, if these alleged incidents occurred before that time, these claims would be barred for the Plaintiff's failure to timely exhaust her administrative remedies by including these allegations in her 1997 EEO complaint and filing the administrative complaint within the applicable deadline.

her with her test scores from her bookbinders test.[14] (Motion at 47–48.) Although the Plaintiff did receive her test scores, she contends that they were delayed and that she needed the scores to determine where she was on the personnel roster to ensure she was not overlooked by the Personnel Department during the selection process. (*Id.*) The Plaintiff offers no evidence that the delay in receiving her scores affected the terms, conditions, or privileges of her employment and cannot demonstrate that this allegation rises to the level of an adverse employment action. *Brown*, 199 F.3d at 457. Consequently, the Defendant is entitled to summary judgment on this claim.

> (c) The Plaintiff Has Failed to Satisfy Her Burden of Proving Causation With Respect to Many of Her Retaliation Claims.

██ The causation element in a retaliation claim is often demonstrated by temporal proximity, and "[a]lthough courts have not established the maximum time lapse between protected Title VII activity and alleged retaliatory actions for establishing a causal connection, courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length." *Brodetski*, 199 F.R.D. at 20. For those alleged acts of retaliation that occurred *before* the Plaintiff engaged in any statutorily protected activity, clearly she cannot prove causation. Similarly, although the Plaintiff engaged in statutorily protected activity in March 1994, the record demonstrates that those individuals

who are alleged to have engaged in retaliatory conduct *were not aware* of the Plaintiff's protected activity. (Motion at 33, 34–35, 40, 46–47, 48, 50, 53 & n. 35 and Ex. 6 Declaration of Neal H. Fine ("Fine Decl."), Exhibit 7 Declaration of Chris J. Brown ("Brown Decl."), Ex. 8 Declaration of Pearl V. Smith ("Smith Decl.").) Consequently, any actions these individuals took could not be retaliatory.

## IV. CONCLUSION

In summary, the Plaintiff has failed to timely exhaust her administrative remedies with respect to her racial discrimination claim and her hostile work environment claim. Even if the Plaintiff presented facts to provide a basis for excusing her failure through equitable remedies, she has not satisfied her ultimate burden to establish a *prima facie* case of racial discrimination or hostile work environment. With regard to her retaliation claims, the Plaintiff has failed to timely exhaust her administrative remedies for all claims arising before her 1997 EEO complaint. With respect to those retaliation allegations after 1997, the Plaintiff has failed to establish a *prima facie* case of retaliation by failing to prove either that she engaged in statutorily protected activity prior to the alleged incident or that she was subjected to an adverse employment action. Therefore, there under the *McDonnell Douglas* analysis applicable to Title VII cases, the Defendant is entitled to summary judgment on all claims.

---

14. The Court notes that the Plaintiff has not presented evidence establishing the dates or time frame in which this alleged retaliation took place, but in her deposition testimony she claims this occurred "probably in 1996 or 1997." (Motion at 47 and Ex. 16 Marshall Depo. at 64.) If these alleged incidents occurred before January of 1997, these claims would be barred for the Plaintiff's failure to timely exhaust her administrative remedies by including these allegations in her 1997 EEO complaint and filing the administrative complaint within the applicable deadline.

***ORDER***

UPON CONSIDERATION of Defendant's Motion for Summary Judgment [52], Plaintiff's Opposition to Defendant Bruce James' Motion for Summary Judgment [53], and Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment [55], the parties' oral arguments, and for the reasons set forth in the accompanying Memorandum Opinion, it is this —— day of July 2003, hereby

**ORDERED** that Defendant's Motion for Summary Judgment [52] is **GRANTED.** It is further

**ORDERED** that this case is **DISMISSED with prejudice.**