**Igor BRODETSKI, Plaintiff,**

v.

**Joseph DUFFEY, Director, USIA and Voice of America, et al., Defendants.**

**CIV. A. No. 98–126(RWR).**

United States District Court, District of Columbia.

March 28, 2001.

---

Igor Brodetski, Rockville, MD, pro se.

Claire M. Whitaker, U.S. Attorney's Office, Washington, DC, for defendants.

### MEMORANDUM OPINION

ROBERTS, District Judge.

Plaintiff Igor Brodetski,[1] an employee with the Russian Branch of Voice of America ("VOA"), a division of the United States Information Agency ("USIA"), brought this

---

1. Plaintiff spells his name "Brodeski" in his complaint, but the majority of his subsequent submissions, as well as his affidavit and the brief filed on his behalf for the Equal Employment Opportunity Commission hearing, spell his name "Brodetski." It is assumed that the spelling on the affidavit is correct.

claim against defendants for workplace retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2, 2000e–3 (1994), as amended ("Title VII"). He alleged five separate incidents that he believes were in retaliation for his testimony at a colleague's equal employment opportunity ("EEO") hearing in 1989 and for his continued filings against defendants with the USIA Office of Civil Rights ("OCR") and the Equal Employment Opportunity Commission ("EEOC"). Defendants moved to dismiss or, in the alternative, for summary judgment. Because plaintiff has failed to establish a prima facie case of retaliation under Title VII, defendants' motion for summary judgment will be granted.

### BACKGROUND

Brodetski has been employed as an International Radio Broadcaster with VOA for at least thirteen years. (Compl. at 1.) He began to complain of retaliation by defendants after he had participated in a colleague's EEO proceeding against VOA in 1989. (Defs.' Mem. in Supp. of Defs.' Mot. Dismiss and/or Summ. J. ("Defs.' Mem.") at 3.) At the time plaintiff filed this claim in early 1998, he had submitted over fifty separate complaints with USIA'S OCR and had appealed many of the complaints to the EEOC after they were dismissed by OCR. (Compl. at 2.) Almost all of plaintiff's complaints alleged retaliation by defendants for his prior EEO activities. (*Id.*) Only five of these complaints are at issue in this case.[2]

I. *Plaintiff's Five Letters to OCR*

Plaintiff sent five letters to OCR during late December 1996 and early January 1997, each describing an individual episode of what he alleged was an act of retaliation. (Compl. at 1.) In his first letter, dated December 12, 1996, plaintiff complained that the News Desk Chief, Martha Wexler, sent him an insulting memorandum requesting that he maintain "civilized behavior and show common courtesy to [his] colleagues." (Compl.

at Ex. 1.) While Wexler based her admonition on an episode during which plaintiff allegedly insulted a colleague, plaintiff claimed that the memorandum was in direct retaliation for his internal EEO complaints, an editorial of his published in the *Washington Times*, and a letter he wrote to the House Foreign Relations Committee, all of which detailed alleged mismanagement of the Russian Branch at VOA. (*Id.*)

In his second letter, dated December 22, 1996, plaintiff protested another memorandum from Wexler that outlined the time and procedure for broadcast rehearsals. (Compl. at Ex. 2.) In the memo, Wexler asked plaintiff to "please check in with [the rehearsal leader, Lucien Ficks] at [specified] times" because Ficks "conducts these rehearsals." (*Id.*) Plaintiff complained to Wexler that the rehearsals were disorganized and unproductive. He also complained that he had not been informed earlier that Lucien Ficks conducted the rehearsals. Plaintiff apparently found this to be particularly improper, because, as he stated in his response to Wexler, putting Ficks in charge of rehearsals "smells of blackmail and provocation" as plaintiff had already filed "FIVE OCR complaints against [Ficks]." (*Id.*)

Plaintiff's third letter, dated December 25, 1996, concerned alleged misallocation of work assignments. (Compl. at Ex. 3.) Plaintiff maintained that he translated seventeen items and read a forty minute newscast in one day while another writer wrote only eight items. Plaintiff alleged that the other writer arrived late to work and read the newspaper, while plaintiff received an excessive amount of work, thus establishing a "clear case of unequal workload distribution [and] treatment." (*Id.*)

In his fourth letter, dated December 26, 1996, plaintiff complained that defendants distributed assignments unevenly, such that work that used to be performed by four to six writers was then performed by two. (Compl. at Ex. 4.) Plaintiff alleged that he was "repeatedly called to read the news and

---

2. This civil action is one of four that plaintiff has filed in this Court against defendants. The first, Civil Action No. 93–1610, was decided by Judge Urbina on May 23, 1995 in defendants' favor.

This action is the second. Two subsequent actions, Civil Action Nos. 98–732 and 98–839, are the subjects of other orders issued today.

voice scripts" while co-workers were not. (*Id.*) He claimed to have been burdened by last minute requests from management and expected to substitute for absent colleagues. Plaintiff argued that this pattern of "deliberate overloading" was part of defendants' retaliation against him for his EEO activities. (*Id.*)

Plaintiff's fifth letter, dated January 8, 1997, stated that he was required to staff the news desk for over four hours alone. (Compl. at Ex. 5.) During the four hours, he said, plaintiff was required to perform duties normally assigned to two people or more. Plaintiff alleged that this work assignment overload was further evidence of defendants' retaliation against him. (*Id.*)

## II. EEO Processing of Plaintiff's Letters

Upon receiving plaintiff's letters, the OCR assigned an EEO counselor, Janice Roane, to consult with plaintiff about these five episodes, in accordance with the federal regulations for processing EEO complaints. *See* 29 C.F.R. §§ 1614.101–110 (West 2000); (Defs.' Mem. at Ex. B). After Ms. Roane determined that she was "unable to resolve the issues/allegations" detailed in plaintiff's letters, the OCR issued five separate "Notice[s] of Right to File Formal Complaint" for each of the original letters that plaintiff submitted. (Defs.' Mem. Ex. A.) Each notice informed plaintiff that, "because the matter ... has not been resolved to your satisfaction, you are now entitled to file a discrimination complaint ... in WRITING, signed, and filed ... WITHIN 15 CALENDER DAYS AFTER RECEIPT OF THIS NOTICE." (*Id.*) The notices were hand-delivered to plaintiff on March 14, 1997, and plaintiff signed the notices on March 15, 1997. (Defs.' Mem. at 3.)

The OCR dismissed the five complaints at issue because plaintiff failed to file a formal complaint with the agency within the fifteen days allotted by the EEO procedures established in 29 C.F.R. § 1614.106. (Defs.' Mem. at 3–4.) Plaintiff argued that the OCR unfairly and prematurely dismissed his five complaints and has written to the OCR repeatedly to have them reopened. (Defs.' Mem. Exs. B, C.) The OCR contended that the dismissal was entirely proper. (*Id.*) As a result, plaintiff brought the instant action against defendants in this Court for *de novo* review.

## DISCUSSION

Defendants moved to dismiss plaintiff's Title VII retaliation claims pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, to obtain summary judgment pursuant to Federal Rule of Civil Procedure 56. I have considered the parties' documents submitted outside of their respective pleadings. Accordingly, defendants' motion will be considered as one for summary judgment under Fed.R.Civ.P. 56. *See Richardson v. Rivers,* 335 F.2d 996, 998 (D.C.Cir.1964); *Batson v. Powell,* 912 F.Supp. 565, 570 (D.D.C.1996).

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the initial burden of proving that there is "no genuine issue." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once that burden has been met, the nonmovant must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* The mere allegation of some factual dispute between the parties is not alone sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses" and it should be construed accordingly. *Celotex,* 477 U.S. at 323–324, 106 S.Ct. 2548. In considering a summary judgment motion, a court is to believe "[t]he evidence of the nonmovant ..., and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. No genuine issue exists unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505.

## I. *Exhaustion of Administrative Remedies*

 A federal employee filing a Title VII action must exhaust his or her administrative remedies before seeking judicial review. *See Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 832–33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Kizas v. Webster*, 707 F.2d 524, 543 (D.C.Cir. 1983). Defendants claim that plaintiff failed to exhaust his administrative remedies before filing this complaint with the Court and, therefore, plaintiff's complaint is barred. Specifically, defendants allege that plaintiff failed to file formal administrative complaints within the prescribed time limits.

The Code of Federal Regulations (the "Code") establishes the procedures governing the administrative processing of Title VII claims against the federal government. *See* 29 C.F.R. §§ 1614.101–110. Before instituting an action in court, within forty-five days of the alleged retaliatory action, the Code requires an aggrieved party to "initiate contact" with an EEO counselor who is employed by the EEOC or by an individual agency's EEO office. *See* 29 C.F.R. § 1614.105(a)(1). The EEO counselor must attempt to resolve the matter by speaking with both parties. *See id.* at §§ 1614.105(b)-(d). If the matter is not resolved, the counselor must submit a notice informing complainant of his or her right to file a formal complaint. *See id.* at § 1614.105(d). Within fifteen days of receiving the notice, the complainant may file a formal written complaint with the agency. *See id.* at §§ 1614.106(a), (b). The Code requires that a formal complaint contain a signed and "sufficiently precise" statement which identifies the "aggrieved individual," "the agency" involved, and "generally the action(s) or practice(s) that form the basis of the complaint." *See id.* at § 1614.106(c).

The parties acknowledged that plaintiff sent five letters to the OCR in late 1996 and early 1997, which outlined the alleged incidents of Title VII retaliation. Neither party disputed that the OCR provided counseling and, when the counseling had failed to produce satisfactory results, the OCR issued five individual notices informing plaintiff of his right to file formal complaints. The issue in dispute is whether plaintiff's original letters to the OCR constituted formal complaints under § 1614.106(c), rather than merely a means of initiating contact pursuant to § 1614.105(a), which does not require plaintiff to submit anything in writing. If the five letters satisfy the technical requirements of a formal complaint under § 1614.106(c), then plaintiff has satisfied the Code's time requirements and succeeded in exhausting his administrative remedies.

 A lenient standard applies in evaluating whether an aggrieved party's actions met his or her administrative exhaustion responsibilities. *See, e.g., Love v. Pullman Co.*, 404 U.S. 522, 526–27, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Loe v. Heckler*, 768 F.2d 409, 416–17 (D.C.Cir.1985); *Bethel v. Jefferson*, 589 F.2d 631, 641–42 (D.C.Cir.1978); *Coles v. Penny*, 531 F.2d 609, 614–15 (D.C.Cir.1976). Rather than dismissing complaints prematurely because of the procedural complexities involved, courts view a complainant's submissions liberally to prevent the complainant from becoming so subsumed by legal technicalities that Title VII's intent is defeated. To this end, the Court of Appeals for the District of Columbia Circuit has stated,

> [B]ecause Title VII is remedial legislation dependent for its enforcement on laymen, we must seek in every case "an interpretation animated by the broad humanitarianism and remedial purposes underlying the federal proscription of employment discrimination," and resultantly that resort to technicalities to foreclose recourse to administrative or judicial processes is "particularly inappropriate."

*Bethel*, 589 F.2d at 642 (footnotes omitted). In fact, when dealing with "procedural ambiguities" in the Title VII framework, "courts . . . have, with virtual unanimity, resolved [disputes] in favor of the complaining party" and allowed the complaints to proceed despite administrative errors. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 461 (5th Cir.1970).

Instead of becoming overly concerned with the intricacies of the EEO administrative process, courts require only that a complaint be adequate to put the agency on notice and that the agency be given an opportunity to respond out of court. *See Loe*, 768 F.2d at

418. Courts have rejected any further procedural requirements imposed by either the EEO offices within the agencies or the EEOC itself. *See Love,* 404 U.S. at 526–27, 92 S.Ct. 616; *Loe,* 768 F.2d at 416–17; *Bethel,* 589 F.2d at 641–42; *Coles,* 531 F.2d at 614–15; *Sanchez,* 431 F.2d at 460–65.

 In accordance with section 1614.106(c) of the Code, plaintiff sent the agency's OCR five signed letters in late December 1996 and early January 1997 that provided sufficiently precise statements of the alleged retaliatory acts and clearly identified the parties involved. These letters contained more than enough information about all five incidents to put the agency on notice of plaintiff's retaliation allegations. Plaintiff stated that he considered the original submissions as sufficiently formal complaints. In his letter dated August 16, 1997 to the EEOC challenging the dismissal of his five complaints, plaintiff wrote, "my complaints/appeals to the EEOC," (referring to the letters of complaint submitted in late 1996 and early 1997), "are ALREADY FORMAL COMPLAINTS." (Compl. at Ex. 7) (emphasis in original).

Much the same situation arose in *Love v. Pullman Co.,* when the petitioner sent the EEOC a letter of complaint, alleging that his employer had violated Title VII. 404 U.S. at 522, 92 S.Ct. 616. The district court dismissed petitioner's claim, because he had not formally filed a second grievance when the agency notified him of his right to do so. *Id.* at 523–24, 92 S.Ct. 616. The court of appeals affirmed. *Love v. Pullman Co.,* 430 F.2d 49 (10th Cir.1969). The Supreme Court reversed, holding that the petitioner had exhausted his administrative remedies successfully, because his original letter fully satisfied the filing requirements. *Id.* at 525, 92 S.Ct. 616. The Court stated that "requir[ing] a second 'filing' by the aggrieved party . . . would serve no purpose other than the creation of an additional procedural technicality . . . particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Id.* at 526–27, 92 S.Ct. 616. As did the petitioner in *Love,* plaintiff detailed his complaints in writing for the agency well before he was informed of his right to formally file

complaints. Under *Love,* plaintiff was not required to take further action to maintain his claims. *Id.* at 526, 92 S.Ct. 616. Plaintiff's five letters of complaint to the OCR satisfied the Code's requirements for filing a formal complaint, and plaintiff has exhausted his administrative remedies within the required time frame. I now turn to the merits of plaintiff's claims.

## II. *Title VII Retaliation*

Title VII retaliation actions are governed by the procedural framework established in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff first must establish a prima facie case of retaliation. If plaintiff succeeds, defendants may rebut plaintiff's prima facie case by disputing the facts or by offering a "legitimate, nondiscriminatory reason" for their actions. *Id.* at 802, 93 S.Ct. 1817. If defendants set forth a successful rebuttal, plaintiff must prove that the reason defendants offered for their actions was merely pretextual. *Id.* at 804, 93 S.Ct. 1817. This burden shifting framework, initially established to cover private discrimination claims under Title VII, also applies to federal employees claiming retaliation. *See, e.g., Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985) (holding that federal government employee successfully established prima facie case of retaliation under *McDonnell Douglas* but failed to prove employer's proffered reason was pretextual).

 To prove a prima facie case of retaliation, plaintiff must establish that (1) he engaged in statutorily protected activity; (2) defendant took an adverse personnel action; and (3) a causal connection existed between the protected activity and the adverse personnel action. *See Brown v. Brody,* 199 F.3d 446, 452–53 (D.C.Cir.1999) (citing *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985) (quoting *McKenna v. Weinberger,* 729 F.2d 783, 788 (D.C.Cir.1984))); *see also Cones v. Shalala,* 199 F.3d 512, 520 (D.C.Cir.2000); *Childers v. Slater,* 44 F.Supp.2d 8, 18 (D.D.C. 1999).

### A. *Causal Connection*

 A causal connection may be inferred "by showing that the employer had knowl-

edge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell,* 759 F.2d at 86. By showing both knowledge and proximity in time, plaintiff may establish the causal connection needed to make a prima facie case of retaliation.

Although courts have not established the maximum time lapse between protected Title VII activity and alleged retaliatory actions for establishing a causal connection, courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length. *See, e.g., Goos v. Nat'l Ass'n of Realtors,* 715 F.Supp. 2, 3–4 (D.D.C.1989) (holding that five weeks constituted a short enough time lapse to establish a causal connection); *Castle v. Bentsen,* 867 F.Supp. 1, 3 (D.D.C.1994) (holding that three to five months is a short enough time lapse between EEO activity and reprisal to establish a causal connection); *Devera v. Adams,* 874 F.Supp. 17, 21 (D.D.C.1995) (holding that "an eight month interval between the two events is not strongly suggestive of a causal link"); *Garrett v. Lujan,* 799 F.Supp. 198, 202 (D.D.C.1992) (holding that almost a year "between plaintiff's EEO activity and the adverse employment decision is too great [a length of time] to support an inference of reprisal"), *but see Hayes v. Shalala,* 902 F.Supp. 259, 264 (D.D.C.1995) (holding that a causal connection existed based on the time plaintiff first became vulnerable to retaliation, even though that time occurred three years after plaintiff engaged in protected activity).

■ Plaintiff's extensive filings establish no causal connection between the five alleged incidents of retaliation at issue in this case and his 1989 EEO activity. Plaintiff filed approximately sixty retaliation complaints with the OCR between 1989 and December 1996, almost all of which referenced his 1989 EEO activity. Defendants, therefore, clearly knew of plaintiff's protected 1989 EEO activity during all of the incidents of alleged retali-

ation. However, the first of these five incidents did not occur until late in 1996, seven years later. This time lapse is too long to establish a causal connection to the 1989 activity.

Broadly read,[3] though, plaintiff's retaliation complaints suggest that defendants also retaliated against him for his ongoing, more recent EEO activity, namely, filing numerous EEO complaints against defendants beginning in 1989 and continuing to the present. While there is too long a time lapse between plaintiff's 1989 EEO activity and his five OCR complaints at issue, plaintiff's recent EEO activities may be close enough in time to the five incidents of alleged retaliation to support an inference of a causal connection.

### B. *Adverse Employment Action*

■ While plaintiff may have established a causal connection to his recent EEO activity, plaintiff also must show that the five alleged incidents of retaliation constituted "legally cognizable adverse action by [his] employer" in order to establish a prima facie case of retaliation. *Brown,* 199 F.3d at 453; *see Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (adverse employment action requires a "significant change in employment status"). Although "an employee need not be fired, demoted or transferred" for an adverse employment action to occur, *see Gary v. Washington Metro. Area Transit Auth.,* 886 F.Supp. 78, 90 (D.D.C.1995), an "employment decision does not rise to the level of an actionable adverse action ... unless there is a 'tangible change in the duties or working conditions constituting a material employment disadvantage.'" *Walker v. Washington Metro. Area Transit Auth.,* 102 F.Supp.2d 24, 29 (D.D.C.2000) (quoting *Kilpatrick v. Riley,* 98 F.Supp.2d 9, 21 (D.D.C. 2000), citing *Brown,* 199 F.3d at 456, and *Childers,* 44 F.Supp.2d at 19). Importantly, the District of Columbia Circuit has held that "courts cannot be wheeled into action for

---

**3.** Plaintiff appears *pro se,* and, consequently, I must read his complaint liberally. *See Richardson v. United States,* 193 F.3d 545, 548 (D.C.Cir. 1999) (citing *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam)). The Supreme Court directs that a *pro se* plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines,* 404 U.S. at 520, 92 S.Ct. 594.

every workplace slight, even one that was possibly based on protected conduct." *Taylor v. Fed. Deposit Ins. Corp.*, 132 F.3d 753, 765 (D.C.Cir.1997).

█ Plaintiff has failed to show that the alleged incidents of retaliation, taken separately or together, constituted adverse employment action. Rather, plaintiff's complaints demonstrate only that he was dissatisfied with his work environment. In plaintiff's first complaint, plaintiff alleged that his supervisor's written warning constituted retaliation for his protected EEO activity. While plaintiff may have disagreed with the warning, he failed to show any evidence that the warning affected his employment position or status, as is required to establish that this warning constituted an adverse employment action. *See Brown*, 199 F.3d at 458 (letter of admonishment was not an adverse employment action, because it did not affect plaintiff's grade or salary); *Walker*, 102 F.Supp.2d at 29 (disciplinary notice was not adverse employment action, because it "did not effect any material change in [plaintiff's] title, duty, salary, benefits, or working hours"). Further, a "reprimand that amounts to a mere scolding, without any disciplinary action which follows, does not rise to the level of adverse action." *Childers*, 44 F.Supp.2d at 20. Accordingly, plaintiff failed to establish that this warning was an adverse employment action under Title VII.

█ Plaintiff's second complaint describes an unpleasant exchange with his supervisor. Plaintiff alleged that his supervisor appointed a colleague, whom plaintiff disliked, to oversee broadcast rehearsals. Apparently, plaintiff perceived this to be an act of retaliation for his EEO activity. Although plaintiff may have been unhappy about a supervisor's mere personnel assignment, this decision does not constitute an adverse employment action. *See Brown*, 199 F.3d at 457 ("Mere idiosyncracies of personal preference are not sufficient to state an injury"); *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996) ("not everything that makes an employee unhappy is an actionable adverse action"); *Childers*, 44 F.Supp.2d at 19; *Schaff v. Shalala*, Nos. 92–1251, 93–1993, 1994 WL 395751, at *5 (D.Md. July 14, 1994) ("[Title VII] is not intended as a vehicle for judicial review of business decisions. Nor does [Title VII] allow a court to sit as a super-personnel department.").

█ In his remaining three complaints, plaintiff alleged that defendants assigned him a disproportionate amount of work in retaliation for his EEO activity. Plaintiff also alleged that colleagues asked him to take on additional assignments, although they did not require him to do so. While plaintiff may have had legitimate concerns over defendants' reduction in its Russian News Desk staff, all employees who worked at the news desk were equally responsible for the extra work load. (Compl. at Ex. 3.) In addition, even if plaintiff had been required to take on additional assignments from his colleagues—which he admitted he was not required to do—"changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions." *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C.Cir.1997); *see also Childers*, 44 F.Supp.2d at 19 ("[m]ere inconveniences and alteration of job responsibilities will not rise to the level of adverse action") (citing *Jones v. Billington*, 12 F.Supp.2d 1, 14 (D.D.C. 1997)). Finally, there is no basis to intervene in an "employer's personnel decision[s] absent [a] demonstrably discriminatory motive." *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C.Cir.1982). .

Plaintiff has not shown that the alleged incidents of retaliation individually or collectively affected his employment status or position sufficiently to constitute an adverse employment action. Accordingly, plaintiff has failed to establish a prima facie case of retaliation under Title VII.

*CONCLUSION* ·

Plaintiff has exhausted his administrative remedies in accordance with 29 C.F.R. §§ 1614.101–110 by filing adequate complaints within the requisite time frame. With the facts viewed in the light most favorable to plaintiff, however, there is no genuine issue of material fact as to plaintiff's Title

**22**

VII retaliation claims. Plaintiff has failed to establish a prima facie case of retaliation for his 1989 EEO activity or for his ongoing EEO activity. Accordingly, defendants' motion for summary judgment will be granted. An appropriate Order accompanies this Opinion.