**Mandy K. MCGOWAN, Plaintiff,**

v.

**James H. BILLINGTON, Librarian of Congress, Defendant.**

Civil Action No. 01–1627 (JMF).

United States District Court, District of Columbia.

Sept. 9, 2003.

Lisa Sheri Goldfluss, United States Attorney's Office, Washington, DC, for Defendant.

Richard L. Swick, Swick & Shapiro, P.C., Washington, DC, for Plaintiff.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This case was referred to me by Judge Sullivan for all purposes including trial pursuant to LCvR 73.1(a). I herein resolve *Defendant's Motion for Partial Summary Judgment.* For the reasons set forth below, defendant's motion for partial summary judgment will be granted in part and denied in part.

### FACTS

There is no genuine issue as to the following facts:

1. On April 7, 1997, the Library of Congress ("LOC") posted a vacancy announcement for the GS–15 position of Deputy Associate Director for Automation.

2. Fifteen (15) of the applicants for the Deputy Associate Director for Automation position were referred to the selecting panel for interviews. One of the applicants for the position was Mandy McGowan ("McGowan"), plaintiff, a GS–14 computer specialist with the LOC.

3. Another applicant for the Deputy Associate Director for Automation position was Henry Rossman ("Rossman"), who was then the Director of Data Systems Administration of the Office of Tax and Revenue for the District of Columbia.

4. Both McGowan and Rossman were among the fifteen (15) candidates for the Deputy Associate Director for

Automation position and were subsequently interviewed by Kent Ronhovde ("Ronhovde"), who, at that time, was the Associate Director for Research at CRS.

5. On August 14, 1997, while serving as CRS Management Specialist, James Richardson ("Richardson") accused plaintiff of abusing the LOC sick leave policy.

6. On September 4, 1997, McGowan filed an informal complaint with the LOC Dispute Resolution Center claiming that Richardson and Ronhovde had discriminated against her based on her national origin.

7. Richardson and Ronhovde were two of three members of a panel that interviewed applicants for the position of Deputy Associate Director for Automation for which plaintiff had applied.

8. Ronhovde selected Rossman, a white male, to be Deputy Associate Director for Automation.

9. On March 19, 1998, plaintiff filed a formal EEO complaint alleging that Richardson and Ronhovde retaliated against her for engaging in protected activity when they did not select her for the position of Deputy Associate Director for Automation.

10. On April 8, 1998, the LOC posted another vacancy announcement for the GS–14 and GS–15 positions of Project Management Coordinator, and plaintiff applied for one of the positions.

11. Richardson, Roger White ("White"), and Bessie Alkisswani ("Alkisswani") evaluated plaintiff. Richardson rated plaintiff a fourteen (14) out of a possible twenty (20); White rated plaintiff a six (6);

and Alkisswani rated plaintiff a twelve (12).

12. Plaintiff's total score of thirty-two (32) was below the cut-off point of 36, which was the threshold for determining which applicants merited an interview.

## DISCUSSION

### Legal Standard on Motion for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The burden of establishing that there is no genuine issue of material fact is on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Nat'l Cable Television Ass'n, Inc. v. Fed. Communications Comm'n,* 479 F.2d 183, 186 (D.C.Cir.1973). To prevail on its motion for summary judgment, defendant must establish that on the basis of the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits," no reasonable trier of fact could render a verdict in plaintiff's favor. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law then determines which facts are material, and only those factual disputes that effect the outcome of the case will preclude summary judgment. *Id.*

In employment discrimination cases, summary judgment must be approached with special caution because discriminatory intent and disparate treatment are difficult to prove. *McCain v. CCA of Tennessee, Inc.,* 254 F.Supp.2d 115, 119 (D.D.C.2003); *Ross v. Runyon,* 859 F.Supp. 15, 21–22 (D.D.C.1994). Thus, the Court must view all of the evidence in a light most favorable to the non-moving

party. If a party fails to make a sufficient showing of an essential element of its case, and on which that party bears the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. 2548. When the evidence is insufficient for a jury to reasonably find in favor of the non-moving party, there is no need for a trial. *Anderson v. Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. 2505.

Before determining whether defendant has met these standards, it is helpful to parse plaintiff's case and defendant's motion. There are two positions at issue. As to the first, plaintiff complains that she was not selected for the position of Deputy Associate Director of Automation because of her national origin and sex. On this claim, plaintiff's theory is that she was more qualified than the white male who got the job. Plaintiff also points to complaints of national origin discrimination she made against Richardson and Ronhovde before she was interviewed for this job and asserts that Richardson, who was on the interviewing panel, and Ronhovde, who ultimately chose the white male instead of her, did so to retaliate against her for those complaints.

As to the second job position at issue, plaintiff complains that Richardson served on a second panel *after* plaintiff filed a complaint about her non-selection for the position of Deputy Associate Director for Automation. In that complaint, plaintiff had asserted that she did not get the job because Richardson and Ronhovde retaliated against her for filing complaints against them before her interview for the first job. Despite this history, Richardson was one of three people who reviewed applications for a second position for which

plaintiff applied, Project Management Coordinator. That panel scored plaintiff's application at below the cutoff point that separated persons to be rejected and persons to be interviewed. Thus, plaintiff's second complaint is that the panel's score was motivated by retaliation against her for complaining about Richardson's being part of the panel that led to Ronhovde's not selecting her for the first job.

For reasons I will explain below, I believe that plaintiff has made out a prima facie case of discrimination and retaliation as to the first job. I also find that, while defendant has come forward with justifiable reasons for its selection of someone else, plaintiff has advanced sufficient evidence that a jury may find those reasons to be a pretext.

As to the second job, I reach the contrary conclusion. I cannot find any evidence that the scores given to plaintiff were in any way the product of national origin discrimination.[1] Furthermore, while Richardson served on the second panel, he scored plaintiff's application higher than the other two members of the panel. While the scores of one of the members of that panel were appreciably lower than the scores of Richardson and the other panel member, plaintiff points to no evidence whatsoever that the panel member who rated plaintiff so low was motivated by an improper animus or that Richardson induced him to rate plaintiff so poorly.

## Non–Selection for Deputy Associate Director for Automation

### Discrimination Claim

■ Defendant erroneously argues that in order for plaintiff to survive summary

---

**1.** I am not perfectly certain that plaintiff is making a claim of national origin discrimination as to the second job. I will deem her to be doing in order to resolve all of her claims at one time.

judgment she must establish her *prima facie* case of discrimination by showing that (1) she is a member of a protected class, (2) she was similarly situated to an employee who was not a member of the protected class, and (3) she and the similarly situated person received disparate treatment. *Memorandum in Support of Defendant's Motion for Summary Judgment* ("D.Mot.") at 5, 7. That is, quite simply, a misstatement of the law in a Title VII non-selection case. A non-selection case is governed by "the precise terms of the precedent set forth in *McDonnell Douglas:* Was the plaintiff rejected for the position and a person outside of his protected class selected?" *Cones v. Shalala*, 199 F.3d 512, 516–17 (D.C.Cir.2000). Defendant attempts to meld the *McDonnell Douglas* test with that of *Bundy v. Jackson*, which is designed expressly for denials of pay or grade increases. *See Bundy v. Jackson*, 641 F.2d 934, 951(D.C.Cir.1981). However, as the Court of Appeals made crystalline clear in *Cones*, requiring a plaintiff in a promotion case to meet the *Bundy* standard of showing that she was disadvantaged compared to a similarly situated person is error. *Cones*, 199 F.3d at 517. Instead, the only legitimate inquiry is whether plaintiff was rejected for the position and a person outside the protected class was selected. *Id.* Hence, plaintiff establishes a *prima facie* case of discrimination by demonstrating that (1) she is a member of a protected class; (2) she applied and was qualified for a job for which defendant was seeking applicants; (3) she was rejected despite her qualifications; and (4) defendant either hired an applicant outside the plaintiff's protected class or kept the position open while seeking other applicants. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Cones*, 199 F.3d at 517. If plaintiff meets that burden, defendant must show a legitimate

business reason for the actions claimed to be discriminatory. *Id.* If, in turn, defendant meets that burden, plaintiff must show that the proffered reasons are a mere pretext for discrimination. *Id.* At that point, if the jury believes the reasons are pretextual, they may infer that the real reason for the employment decision was the discrimination that the defendant denies. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1291–93 (D.C.Cir.1998) (en banc).

■ Plaintiff easily meets the first prong of the *McDonnell Douglas* test. As a Korean and as a female, plaintiff is a member of two protected groups. Second, McGowan applied for the Deputy Associate Director for Automation position and was found qualified for the position because she was selected for an interview.

■ The burden now shifts to defendant to show a legitimate, non-discriminatory reason for the actions taken. To meet its burden, defendant proffers the Personnel Action Recommendation authored by Ronhovde, one of the selecting officials for the position. This document summarizes Ronhovde's review and evaluation of Rossman's credentials as well as those of each of the candidates whom he did not recommend for the position. The recommendation by Ronhovde demonstrates that Rossman had supervised a staff of over seventy (70) at the Department of Finance and Revenue for the District of Columbia. D. Mot., Exhibit A–2 at 2. Additionally, he was responsible for advising the Office of Tax and Revenue and other District of Columbia officials about technology issues that were of critical importance to the head of CRS Automation Office, "including the desktop, the network, reprographic systems, mainframe applications, procure-

ment, and telecommunications." *Id.* It was also important to Ronhovde that Rossman could manage a budget over of $2 million. *Id.* In short, Ronhovde thought Rossman had "the best combination of knowledge, skills, and abilities for success in undertaking this important position for [CRS]." *Id.* at 3. Given this report, defendant has satisfied its burden of articulating a legitimate, non-discriminatory reason for not selecting plaintiff for the Automation position.

■ Having provided a legitimate business reason for selecting Rossman, the burden once again shifts to plaintiff to prove that the reasons proffered are a mere pretext for discrimination. Pretext must be established by direct evidence or an inference that discrimination was the real reason for the employment action. *Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1078 (D.C.Cir.1999); *Aka*, 156 F.3d at 1292–93. Pretext may also be established with comparative evidence that white males were treated more favorably or with statistical evidence showing that the employer discriminated against persons of plaintiff's national origin and gender. *Bailey v. MCI Telecommunications Corp.*, 29 F.E.P. Cases 1457, 1459, 1982 WL 31073 (D.D.C.1982). However, no additional proof is required by plaintiff once it is shown that a jury could reject the employer's explanation. *Aka*, 156 F.3d at 1292. Plaintiffs are not limited to merely comparing candidates' qualifications, but may also attempt to show the defendant's explanation was fabricated after the fact or that the defendant has misstated the victorious candidate's qualifications. *Id.* at 1295.

■ In my view, plaintiff has meet her burden of establishing that a reasonable finder of fact could find that the reasons given for the selection of Rossman were pretextual. First, plaintiff offers a cri-

tiqued summary of why Rossman is not as qualified as she is for the position. *Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment* ("P.Opp.") at 21–24. Moreover, plaintiff points to specific portions of Rossman's résumé, tendering evidence that Ronhovde misstated his qualifications so that he appeared more qualified than he was. *Id.* For example, Ronhovde notes in the Personnel Action Recommendation that "Rossman has fully demonstrated his ability to manage an information technology program, having done so for over 10 years." D. Mot., Exhibit A–2 at 2. Yet, plaintiff points out that a review of his application clearly shows that he was only promoted to Director of Data Systems at the Office of Tax and Revenue one month before applying for the Automation position. D. Mot., Exhibit B at 2; P. Opp., Exhibit 3 at 2. Rossman also served as an Associate Director for Data Systems for only one year. *Id.* Additionally, plaintiff notes that, unlike her career, the majority of Rossman's career has been unrelated to computers and that his educational background is in the liberal arts. *Id.* Lastly, Ronhovde, in preparation for this litigation, attested to a declaration regarding factors he used to make his recommendation for the position. Plaintiff tenders proof that these additional factors were not part of the original vacancy announcement as published in 1997. P. Opp. at 24. Such a showing has considerable evidentiary significance and may suffice for a jury to find that the employer's explanation is incorrect or fabricated, giving rise to an inference of discrimination. *See Aka*, 156 F.3d at 1295.

In these cases, a fine line must be walked between permitting a jury to perform its proper function of resolving genuine issues of material fact and permitting them to quarrel with management's unquestioned prerogative to choose among

qualified applicants. However, it hardly follows, as the government argues in so many of these cases, that it is the trial judge's responsibility to dismiss the case because legitimate arguments can be made that the person selected was most qualified. Instead, the moment a trial judge finds a permissible basis for a reasonable person to reject management's explanation for its selection, his or her job has ended. The last thing the judge can do is to try to determine who is telling the truth. *Athridge v. Rivas,* 312 F.3d 474, 477 (D.C.Cir. 2002). In my view, plaintiff's pointing to evidence of some distance between the selectee's actual qualifications and Ronhovde's justification for choosing him permit a reasonable person to conclude that the justification was not true, particularly when I view the evidence in a light most favorable to the non-moving party. I will therefore deny summary judgment and allow plaintiff to proceed to trial on her discrimination claim regarding her nonselection for the Deputy Associate Director for Automation position.

*Retaliation Claim*

Following her application for the Deputy Associate Director for Automation position, plaintiff filed a grievance and an informal complaint with the Dispute Resolution Center ("DRC") against Richardson, Ronhovde, and Angela Evans ("Evans"), Deputy Director of CRS, claiming that they discriminated against her because of her national origin. Amended Complaint, ¶¶ 12, 13. Plaintiff was subsequently interviewed for the Automation position in October 1997 and was ultimately denied the position. *Id.* ¶¶ 11, 14, & 15.

■ For a retaliation claim, plaintiff must establish that (1) she engaged in statutorily protected activity; (2) her employer took an adverse employment action; and (3) there is a causal connection between the two. *Holbrook v. Reno,* 196

F.3d 255, 263 (D.C.Cir.1999); *Brodetski v. Duffey,* 199 F.R.D. 14, 19 (D.D.C.2001); *Hastie v. Henderson,* 121 F.Supp.2d 72, 79–80 (D.D.C.2000). Such a showing raises a "rebuttable presumption of unlawful discrimination" and shifts to the defendant the burden to "rebut the presumption by asserting a legitimate, non-discriminatory reason for its actions." *Thomas v. Nat'l Football League Players Ass'n,* 131 F.3d 198, 202 (D.C.Cir.1997) (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If the defendant meets this burden of production, "the presumption of discrimination dissolves," and plaintiff assumes the burden "to persuade the trier of fact that the defendant's proffered reason was not the actual or sole basis for the disputed action." *Id.*

■ Title VII provides in relevant part that it is unlawful for an employer to discriminate against an employee for opposing any practice made unlawful under the statute or for making a charge under the statute. 42 U.S.C. § 2000e–3(a). The D.C. Circuit has determined that the scope of statutorily protected activity under § 2000e–3(a) must be broad in order to promote the purposes of Title VII and includes opposition to allegedly discriminatory practices outside the Equal Employment Opportunity Commission process. *Parker v. B & O Railroad Co.,* 652 F.2d 1012, 1019 (D.C.Cir.1981). Plaintiff first engaged in protected activity when she filed a grievance on August 14, 1997 against Richardson and Evans, premised on national origin discrimination. P. Opp. at 26. The grievance concerned allegations by Richardson that plaintiff had abused the amount of sick leave to which she was entitled under the LOC policy. *Id.* at 26, n. 3. On September 4, 1997, plaintiff filed an informal complaint with the Dispute Resolution Center ("DRC")

against Richardson and Ronhovde. *Id.* at 27. The record, therefore, demonstrates that plaintiff engaged in statutorily protected activity as it is defined by Title VII when she filed complaints of discrimination prior to being interviewed for the position by Richardson and Ronhovde. *See Webb v. District of Columbia,* 864 F.Supp. 175, 186 (D.D.C.1994) ("The record is replete with plaintiff's formal and informal labor grievances lodged against defendant.... Where subsequent to these complaints defendant selected 58 other individuals for positions to which plaintiff was qualified, a *prima facie* case of reprisal discrimination has been established.") (internal citations omitted).

Additionally, plaintiff must show that she suffered an adverse employment action at the hands of her employer. *Brown v. Brody,* 199 F.3d 446, 455 (D.C.Cir.1999). Plaintiff easily meets this burden by pointing to distinct events that may have been retaliatory and would have risen to the level of an adverse employment action, *i.e.,* not being hired for the Deputy Associate Director for Automation position. By not being selected, plaintiff suffered a loss of grade promotion and pay raise.

The causation element in a retaliation case is often measured by temporal proximity, and "[a]lthough courts have not established the maximum time lapse between protected Title VII activity and alleged retaliatory actions for establishing a causal connection, courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length." *Brodetski,* 199 F.R.D. at 20. Plaintiff made her two informal complaints in August and September of 1997. Although she applied for the Automation position in April 1997, she was interviewed for it in October 1997, which was only a few weeks after having filed her grievances against Richardson and Ronhovde. These events were sufficiently close enough in time to infer a causal nexus on the facts of this case. *Compare Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177–78 (3rd Cir.1997); *Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 42–43 (5th Cir.1992).

■ Because plaintiff has met her burden, the burden now shifts to defendant to justify its actions. Defendant again proffers Ronhovde's detailed explanation as evidence of its legitimate, non-discriminatory reason for believing Rossman was the superior candidate. D. Mot., Exhibit A–2 at 2–3. Plaintiff, looking at the same evidence, insists that she was more qualified for the position and that Ronhovde intentionally concocted the proffered explanation in order to hide his true motive for not selecting her—retaliation for filing a complaint with the DRC against him. P. Opp. at 18–24. I have just concluded that such evidence is sufficient to permit a reasonable finder of fact to determine that the reasons for selecting Rossman were pretextual. Because plaintiff met her burden, I will deny summary judgment and allow plaintiff to proceed to trial on her retaliation claim for non-selection for the Deputy Associate Director of Automation position.

### Non–Selection for Project Management Coordinator

*Retaliation Claim*

Plaintiff claims that she again suffered national origin and gender discrimination as a result of being denied the opportunity to interview for both a GS–14 and GS–15 position as a Project Management Coordinator. Amended Complaint, ¶¶ 17–18.

As noted above, as a Korean and a female, plaintiff is a member of two pro-

tected classes. In the spring of 1998,[2] plaintiff applied for one of the two positions as a Project Management Coordinator. P. Opp. at 28. Her application was reviewed by a three-person panel consisting of Richardson, White, and Alkisswani. *Id.*, Exhibit 9 at 6–7. Originally, plaintiff received a total score of thirty-two (32), which was below the required thirty-six (36) points needed to advance to the interview process. P. Opp. at 28, Exhibit 9 at 6. Subsequently, plaintiff's scores were reassessed because White, who was a member of the rating panel for both the Deputy Associate Director position and the Project Management Coordinator position, had given such divergent ratings for positions that allegedly shared similar KSA's. *Id.* at 29–31, Exhibit 11. After being re-evaluated, plaintiff only received an additional two (2) points, and her total score still fell below the thirty-six (36) points required to be awarded an interview. *Id.* at 28 & n. 4; Exhibit 9 at 2.

Prior to applying for the Project Management Coordinator position, on March 19, 1998, plaintiff filed her first formal EEO complaint alleging discrimination and retaliation against Richardson[3] and Ronhovde for not being selected as the Deputy Associate Director for Automation. Amended Complaint, ¶ 16. In support of her retaliation claim, plaintiff alleges that both White and Richardson gave her low scores because they were aware of her previously filed EEO complaint against senior management, resulting from her non-selection for the Deputy Associate Director for Automaton position. P. Opp. at

29, 32. Thereafter, on September 24, 1998, plaintiff filed her second EEO complaint alleging retaliation by Richardson and Ronhovde for not selecting her for an interview for the Project Management Coordinator position. Amended Complaint, ¶ 19.

A *prima facie* case of retaliation requires plaintiff to prove that (1) she engaged in statutorily protected activity; (2) she was subjected to an adverse employment action; and (3) a causal connection exists between the two events. *Holbrook*, 196 F.3d at 263. Plaintiff meets the first prong with the filing of her first formal EEO complaint, alleging discrimination and retaliation against Richardson and Ronhovde in denying her selection for the Automation position.

█ Plaintiff must also show that she suffered some adverse employment action as a result of engaging in such protected activity. While failure to promote is generally deemed an adverse action, *Stella v. Mineta*, 284 F.3d 135, 146 (D.C.Cir.2002), this Circuit has never specifically held that being denied an interview is in itself an adverse employment action. Assuming solely for the sake of the argument that it is, plaintiff presents evidence of a causal connection between her first EEO complaint filed in March and not getting an interview for the Project Management Coordinator position only months later.

Having met her *prima facie* case of retaliation, with the assistance of this as-

---

2. It is unclear which grade level Project Management Coordinator position plaintiff applied for and when. Her complaint states that she applied for, presumably, the GS–14 position in April 1998. Amended Complaint, ¶ 17. Defendant's motion and corresponding exhibits indicate that she applied for the GS–15 position in May 1998 and was rated for

that position only. D. Mot. at 19, Exhibit E–4; P. Opp., Exhibit 9.

3. Neither the parties' briefs nor the record in this case appears to show that Richardson was involved in the selection of applicants for the Deputy Associate Director for Automation position. *See* D.Mot., Exhibit E; P. Opp., Exhibit 6 at 5.

sumption, the burden again shifts to defendant to show a legitimate, non-discriminatory reason for the disputed action. Defendant proffers the crediting plan against which plaintiff's application was rated and denotes the aggregate scores given to plaintiff by the panel, specifically by Richardson. D. Mot. at 19–20, Exhibit E. Richardson gave plaintiff the highest scores possible for the first two KSA's, which were "knowledge of management principles" and "knowledge of the legislative process." *Id.* at Exhibit E–3. For the third KSA—"ability to communicate with others"—she was given the mid-range score of 3 by Richardson. *Id.* For the fourth KSA—"ability to communicate in writing"—Richardson gave plaintiff the lowest possible score because she did not provide any evidence to merit a score of three (3); such evidence would have included instructional materials, a paper written for a professional audience, final editing of a professional article, or written answers to congressional hearings. *Id.* at Exhibit E; E–2; and E–3.

■ However, plaintiff argues that Richardson chose to criticize her in the most subjective factor, the ability to communicate, and by doing so, robbed her of the two additional points [4] she needed to secure an interview for the position. P. Opp. at 32. An employer's reliance on disputed subjective assessments will not always create a jury issue. *Aka,* 156 F.3d at 1298–99. If the reliance is modest, and the employer has other, well-founded reasons, summary judgment may be appropriate. *Id.*

■ Plaintiff has more significant problems. She attacks the scores she received because she got lower scores when being evaluated for the second job and higher scores as to the first. According to plaintiff, this discrepancy is inexplicable because the KSA's for the two jobs were similar. However, they are not similar as indicated by the following chart:

| Job # 970660 Deputy Associate Director for Automation | Job # 980116 Project Management Coordinator |
| --- | --- |
| Ability to manage an information technology program | Knowledge of management principles and automation information systems |
| Knowledge of information technology systems | Knowledge of legislative process and concerns of Congress |
| Ability to plan and supervise diverse staff | Ability to communicate and interact with others |
| Ability to communicate and interact with others | Ability to communicate in writing |

Because, with one exception, the KSA's for the two jobs are so obviously different, comparing scores as to each factor proves very little indeed.

Moreover, plaintiff complained about Richardson's discrimination and retaliation, but it was Richardson who gave her the highest marks as indicated by the following chart:

---

**4.** McGowan needed four (4) additional points after the first rating panel evaluated the candidates. It was only after her application was re-evaluated as a result of an aberration in White's scores that plaintiff needed two (2) additional points to make the cut-off for an interview.

| Rater | KSA 1 | KSA 2 | KSA 3 | KSA 4 | Total |
|-------|-------|-------|-------|-------|-------|
| White | 1 | 1 | 3 | 1 | 6 |
| Alkisswani | 5 | 3 | 3 | 1 | 12 |
| Richardson | 5 | 5 | 3 | 1 | 14 |
| Total | | | | | 32 |

Indeed, Richardson's marks were higher as to KSA 2 than Alkisswani's and do not permit any inference that his marks were a pretense for retaliation. Indeed, had the other raters scored plaintiff as highly as Richardson, she would have made the cut easily. She also would have exceeded the point threshold had White rated her as highly as Alkisswani. Understandably, plaintiff shifts gears and attacks White, noting that he rated her a five (5) on her ability to communicate with others as to the first job but a three (3) as to the identical KSA for the second job. Her counsel notes sarcastically that this ability did not diminish during the year between her application for the first job and her application for the second. *Plaintiff's Response to Defendant's Statement of Material Facts* at 40–41. Yet that bit of cynicism ignores that Richardson and Alkisswani also gave plaintiff a three (3) as to that KSA. It is equally likely that White's rating of five (5) on that KSA for the first job was higher than it should have been as it is likely that his rating of three (3) on that KSA for the second job was corrected because it was corroborated by identical scores from the two other raters.

Perhaps more to the point, there is not a scintilla of evidence that White had any motive to retaliate against plaintiff because she did not name him in any complaint of discrimination or retaliation. Plaintiff's counsel alleges in his pleadings that White was the management's cat's paw and did its dirty work. There is no proof upon which a reasonable juror could base that assertion, and the first principle of summary judgment is that allegations in a pleading cannot defeat a motion for summary judgment. 10A Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2723 at 389–390 (1998) ("Nor can the motion [for summary judgment] be defeated by factual assertions in the brief of the party opposing it, inasmuch as documents of this character are self-serving and are not probative evidence of the existence or nonexistence of any factual issues.").

*Discrimination Claim*

As I have noted, I am not certain whether plaintiff is claiming that not getting an interview for the Project Management Coordinator Position was motivated by national origin discrimination. Assuming she is, this analysis requires its dismissal as well. Assuming, again for the sake of the argument, that not getting the interview was an adverse employment action and that she has otherwise made out a *prima facie* case, the defendant has produced legitimate reasons for not granting her that interview. Plaintiff can produce no evidence that those reasons were a pretext for discrimination, any more than she could prove they were a pretext for retaliation.

An Order accompanies this Memorandum Opinion.

## ORDER

In accordance with the accompanying Memorandum Opinion, it is, therefore, hereby,

**ORDERED** that *Defendant's Motion for Partial Summary Judgment* [# 38] is

GRANTED IN PART and DENIED IN PART.